Milligan, J.,
delivered the opinion of the Court.
This is a writ of error, prosecuted to reverse a decree of the Chancellor, dismissing the bill for the want of equity. The cause was heard on bill and answer, and the exhibits therewith, filed. The material facts involved in the case, and necessary to be noticed, are briefly as follows:
*318 James Temple died intestate, in 1821, leaving a widow and seven children. At his death he was the owner of two tracts of land, one in G-reene county, and the other in Giles County, containing each, about three hundred acres; and some five or six slaves, with other property, not necessary specifically to be mentioned. His widow, Mary Temple, administered on his estate; and, some two years thereafter, intermarried with one Henry A. Farnsworth. In 1832, the defendant, John G. Farnsworth intermarried with Jane M. Temple, the daughter of James and Mary Temple, by whom he had one child, Mary Jane, now the wife of the complainant, John McCampbell. Soon after the birth of said Mary Jane, her mother died, leaving her an infant of only about three weeks old. After the death of His wife, the defendant, John G. Farns-worth, placed his infant daughter in the custody, care, and control of her grand-mother, the said Mary Farns-worth; and- in 1836 entered into a written agreement with her husband, Henry A. Farnsworth, in which it was stipulated that the complainant, Mary Jane, was to be and remain under the care and control of the said Henry A. Farnsworth’s wife, until she arrived at the age of 18 years; and they were to treat her as one of their own children, giving her a limited education, with a suitable outfit, etc.
In consideration of which, the defendant, John G. Farnsworth, agreed' to surrender to the said Henry A. Farnsworth $55, which, it appears, on a settlement of all the-matters of interest, real and personal, accruing to him in right of his wife, in the estate of James *319 Temple, deceased, was found to be due from Henry A. Farnsworth, to the defendant, John G-. Farnsworth; and, also, to allow the said Henry A., to continue the possession of land and negroes which had descended to the complainant, Mary Jane, through her mother, until she reached eighteen years of age, on the said Henry A/s paying interest on the $55, rent on one-eighth part of the lands, and a reasonable hire for one-eighth part of the slaves, from the time the said Mary Jane was five years of age, until she reached eighteen; and then to deliver to her, in her own right, the money, lands, and negroes aforesaid.
In March, 1838, John Link and Major S. Temple, guardians of the minor heirs of James Temple, deceased, and of Eliza M. Temple, one of the heirs, who was declared a lunatic, and by Major S. Temple, in his own right, filed a bill against Henry A. Farnsworth and his wife Mary, (who was administratrix,) respondent John Gr. Farnsworth, and the other heirs at law, and distributees of the estate of James Temple, deceased, for the settlement and distribution of the personal estate, and for the sale of the slaves and partition of the real estate. Pending this bill, in July, 1838, the defendant, John G-. Farnsworth and Henry A. Farnsworth, cancelled the former agreement, and entered into another, which is, in substance, as follows:
The said Henry A. Farnsworth, and. his wife, were to continue the custody and control of the complainant, Mary Jane, and to receive a reasonable compensation for their care and services, until she was five years old, and, after that period, all compensation was to cease, and *320 ber labor was to be set off against the expenses necessarily incurred in her support and maintenance. She was to be well cared for, comfortably clothed, and instructed in the rudiments of a common English education; and, when she arrived at the age of eighteen, the said Henry A. and wife, were to furnish her with certain articles of clothing, household and kitchen furniture, and other specified articles of personal property, necessary to keep house.
No allusion, in this agreement, is made to the interest derived through the said Mary Jane’s mother, in her father, James Temple’s estate. It is a simple agreement, wholly independent of the estate, and, in that respect, materially differs from the former.
The bill, as it appears, was prosecuted to final decree, and the whole estate, real and personal, wound up under it. The lands and negroes were sold, and distribution of proceeds made among the heirs at law, and distributees of intestate.
The interest of the complainant, Mary J., in the lands, as it appears, amounted to $130, which was paid over to the defendant, John G-. Farnsworth, and, by him, as he states in his answer, received, as guardian of his daughter, Mary Jane, and afterwards fully accounted for to the complainants, who receipted therefor. The interest to each distributee, as it appears in the sale of the negroes, was $255. This sum, which, it is insisted, accrued to the defendant, John Gr. Farnsworth, in right of his wife, was received as a payment pro tanto, for one of the slaves, purchased by him at the Chancery sale. The slave *321 thus purchased, was delivered to the defendant, John Gr., which he ever after held and claimed in his own right. No serious contest is made here about the proceeds of the real estate. That appears to have been long since satisfactorily adjusted. Nor is it controverted that the defendant, John Gr. Farnsworth, as husband surviving his wife, had a lawful right to take, by virtue of his marital rights, a distributive interest in the personal estate of his deceased wife’s father. But, it is insisted, that the original agreement entered into between the defendant, John Gr., and Henry A. Farnsworth, was a valid contract, and operated to pass the entire interest, which the former derived in right of his wife, in the personal estate of James Temple, deceased; and that it was irrevocable.
We , are unable to conceive, in this proposition, in any light in which we can view this agreement, so far as Mrs. McCampbell is concerned, it is merely voluntary, and supported by no other consideration than a meritorious one. Placed upon that ground alone, we would not hesitate to hold, that, if the trust, which is insisted on in argument, was completely vested in a trustee, although merely voluntary, and supported by no other consideration than a good or meritorious one, that a Court of equity would enforce it in favor of a wife or child, against the creator of the trust, and all other persons not standing in one of these relations. This principle is settled in the case of Ellison vs. Ellison, 16 Ves., 656, and has been, we believe, ever since, followed with but little modification, both in England,and America. But, if the instrument is purely voluntary, and it *322 requires the aid of a Court of equity, to constitute the party claiming its benefits, cestui que trust, the aid of a Court of Chancery will be withheld. Ib. This agreement does not fall strictly within either of these principles. At law it is wholly invalid, and incapable of being enforced by either party.
It purports to confer upon Henry A. Farnsworth, rights and privileges which did not, at the time of the agreement, rest in the bargainor. His interest in the personal estate of James Temple, deceased, in right of his wife, was contingent. No valid settlement had, at that time, been made by the administra-trix of the personal estate. The debts and liabilities, so far as we can see from this record, were wholly unascertained; and it could not appear otherwise, than by a settlement of the administration, that anything whatever, would remain for distribution among the distributees, after the payment of the debts of the estate. The possession of the six negroes mentioned in the agreement, which it is assumed was secured to Henry A. Farnsworth, was, in no sense, under the bar-gainor’s control; nor was it in his power to secure to the latter, the occupation and enjoyment of the lands. The title to both the lands and the negroes, on the death of James Temple, descended to his heirs a law, and constitute no part of the administration, except to pay debts. Both were held by the heirs as tenants in common; and at the date of the original agreement, and before the sale, John Gr. Farnsworth had no authority to make such a contract. It conferred no rights on the bargainor, and was strictly nudum factum: 1 Par. on Con., 353; 1 Meigs’ Digest, No. 495. The *323 defendant, John G. Farnsworth, at that time, was not the guardian of his infant daughter, nor did he pretend to act in that capacity, or to contract as a tenant in common. The consideration, so far at least as the occupation of the lands and the services of the ne-groes, wholly failed; and Henry a Farnsworth, on that ground, also, and under well settled principles, was thereby at liberty to put an end to the undertaking on his part, at any time: 1 Sugden on Vendors, 489, 490, bottom.
The agreement itself resting in fieri, and having been enterd into, by its very terms and obvious meaning, more for the purpose of securing to Henry A. Farnsworth and his wife compensation for their care and attention to the complainant, Mary Jane, than to settle on her an estate in futuro, must be held to be revocable by the parties thereto, especially since no beneficial interest had, at the time of the revocation, vested in the complainant, Mary Jane: 1 Leading Cases in Equity, Hor. & Wal., notes, 328.
Superadded to this, the proceedings in the case in equity, brought on the 5th of March 1838, by J. Link and M. S. Temple, Guardians, &c., vs. Henry A. Farnsworth and Wife, defendant, John G. Farnsworth, and others, for the partition of the lands and sale of the negroes, and generally to distribute and settle up the estate, placed it utterly beyond the power of the parties to this agreement, to fulfill its stipulations. The lands and negroes, which formed the principal inducement to the agreement, were placed by this proceeding under the control of the Chancery Court, and disposed of under its decrees. The settlement of the *324 entire estate, and especially as between complainant, Mary Jane, and her father, John Gr. Farnsworth, so far as we can judge of it from this record, appears to have been fair and even liberal on the part of the defendant to his infant daughter. There is nothing unequitable or unjust in it. After the sale of the lands, and his appointment as guardian of his daughter, he received her interest in the proceeds of the sale and paid it over with compound interest, for which she and her husband, John McCampbell, executed their joint receipt.
Then, at the sale of the negroes, he purchased one of them, and at his instance, $255 of the amount derived from the sale of the slaves belonging to the estate of James Temple, deceased, in right of his wife, was applied in part payment of the purchase price of the negro. The title to the slave was vested in him; and he appears to have claimed and controlled her and her increase, as his own, ever since. No trust by the sale of the agreement hereinbefore referred to, was created, that a court of equity could enforce, or that would prevent the operation of the Statute of limitations; and even if such had been the case, we are satisfied from, the answer, and the exhibits therewith filed in proof, that this bill was brought more than three years after the complainant, Mary Jane, had arrived at full age, and the title to the slaves was perfected in the defendant, John Gr. Farnsworth.
We cannot look to the amended bill for any purpose. It is not properly on file in this case.
In any view of this cause, we are satisfied with the Chancellor’s decree; and affirm it.
[This case should have appeared with the Jackson Opinions in this Yolume, hut was not furnished in time for insertion at its proper place. — Repobter.]